**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

BENJAMIN R. FUHRER,

                    Plaintiff,

v.                                                      No. 13-CV-415 CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

                    Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Mr. Fuhrer's *Motion to Reverse or*

*Remand for Hearing with Supporting Memorandum* ("Motion"), filed on September 16,

2013, (Doc. 17), and *Defendant's Response to Plaintiff's Motion to Reverse and Remand*

*for Rehearing with Supporting Memorandum* ("Response"), filed on November 15, 2013,

(Doc. 19).

Benjamin Fuhrer filed an application for disability insurance benefits and

Supplemental Security Income benefits on November 30, 2009, and an application for

child disability benefits on January 19, 2010, alleging disability beginning January 1,

1997. (Administrative Record ("AR") 14, 28, 109–10). Both of his applications were

denied on February 1, 2010, and also upon reconsideration on October 30, 2010. (AR

14, 28). Mr. Fuhrer filed his requests for a hearing on November 22 and 23, 2011, (AR

14, 28); a hearing occurred on May 18, 2011 before Administrative Law Judge ("ALJ")

Donna Montano (AR 481–507). Mr. Fuhrer and Cornelius J. Ford, an impartial vocational

expert, testified at the hearing. (AR 481–507). The ALJ issued both of her decisions on

January 5, 2012, finding that Mr. Fuhrer is not disabled under 20 C.F.R. §§
404.350(a)(5), 404.1520(g) and 416.920(g). (AR 24, 38). Mr. Fuhrer filed an application
for review by the Appeals Council, which was summarily denied, (AR 3–6), making the
decisions of ALJ Montano the final decisions of the Commissioner of the Social Security
Administration (the "Commissioner") for the purposes of this appeal.

Mr. Fuhrer complains that ALJ Montano committed reversible, legal error by: (1)
failing to find that Mr. Fuhrer's depression and fatigue are severe impairments; and (2)
failing to properly consider three medical source opinions. (Doc. 17). The Court has
reviewed the Motion, the Response, and relevant law. Additionally, the Court has
meticulously reviewed and considered the entire administrative record. Because the
Administrative Law Judge did not commit reversible error as alleged by Mr. Fuhrer, and
all of her challenged findings are supported by substantial evidence, the Court finds that
the Motion should be **DENIED** and the case should be **DISMISSED WITH PREJUDICE**.

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's
final decision is supported by substantial evidence and whether the correct legal
standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing
*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).
If substantial evidence supports the ALJ's findings and the correct legal standards were
applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.
*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d
1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A
court should meticulously review the entire record but should neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§

3

423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Fuhrer initially applied for disability benefits alleging he is unable to work due to fibromyalgia, severe depression, irritable bowel syndrome, and chronic fatigue. (AR 161). The administrative record includes his medical records, work history report, disability application, hearing testimony, and non-examining state agency evaluations, which were used by the ALJ to evaluate Mr. Fuhrer's disability claims.

### A.    *The ALJ Decisions*

ALJ Montano issued two decisions on January 5, 2012—one relating to Mr.

---

[1]  20 C.F.R. pt. 404, subpt. P, app. 1.

Fuhrer's claim for child disability, (AR 14–24), and another relating to Mr. Fuhrer's claims

for disability insurance and SSI benefits, (AR 28–38). Those decisions are virtually

identical for the purposes of this Court's review. At step one, ALJ Montano determined

that Mr. Fuhrer had not engaged in substantial gainful activity since January 1, 1997.

(AR 16, 30). At step two, the ALJ concluded Mr. Fuhrer to be severely impaired with

fibromyalgia. (AR 16, 31). She found that he was also impaired with irritable bowel

syndrome, depression, possible attention deficit disorder, and alcohol abuse, but that

those impairments, separately and in combination, were not severe. (AR 16, 31).

At step three, the ALJ determined that none of Mr. Fuhrer's impairments equal

one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925, and 416.926. (AR 19, 33). The ALJ proceeded to step four, and

made residual functional capacity ("RFC") findings that Mr. Fuhrer could perform a full

range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (AR 20,

34). She also determined that Mr. Fuhrer had no past relevant work for the purposes of

step four, and proceeded to step five. (AR 23, 37). At step five, ALJ Montano found that,

in consideration of Mr. Fuhrer's age, education, and work experience, and ability to

perform a full range of medium work, he was capable of performing work that exists in

significant numbers in the national economy, and is therefore not disabled. (AR 23–24,

38).

B.     *Objective Medical Evidence Considered by the ALJ*

The ALJ discussed the objective medical evidence in the record, which consists of

treatment notes and reports of various doctors and health care professionals. All of the

errors that Mr. Fuhrer raises are directly related to ALJ Montano's analysis of the

objective medical evidence in the record.

ALJ Montano observed that Mr. Fuhrer was treated by his family physician, Patricia J. Andrews, M.D., between December 2003 and 2007, for fibromyalgia, fatigue, difficulty sleeping, insomnia, depression, and poor memory and concentration. (AR 205–319). Mr. Fuhrer was first diagnosed with fibromyalgia by Dr. Andrews in December 2003. (AR 305). Dr. Andrews prescribed Mr. Fuhrer various anti-depressants, primarily for treatment of fibromyalgia, and not for any diagnosed depression. On December 22, 2004, Dr. Andrews observed that Mr. Fuhrer had admitted to mild symptoms of depression related to his medical condition of fibromyalgia, and told Mr. Fuhrer's mother that Mr. Fuhrer would need extensive additional evaluation and testing to successfully proceed with a disability claim. (AR 259, 263). On April 21, 2006, Mr. Fuhrer reported that he was very depressed because he and his girlfriend had ended their relationship. (AR 238). On August 8, 2007, Dr. Andrews restarted him on Paxil, which had been the most helpful of all of the anti-depressants she had prescribed. (AR 212).

On May 24, 2004, Dr. Andrews completed a "Medical History Statement" in support of a disabled dependent application Mr. Fuhrer's mother filed with her insurer. (AR 267–70). Dr. Andrews completed a fill-in-the-blank form, and answered "yes" to the question: "[i]s [Mr. Fuhrer] now incapable of self-sustaining employment because of Mental Retardation or Physical Handicap?" (AR 270). She wrote that the nature and cause of his incapacity was chronic fatigue and fibromyalgia, and that it was "questionable" whether he may be employable in the future. (AR 270).

The ALJ granted little weight to Dr. Andrews' opinion set forth in that form. (AR 22, 36). The ALJ noted that Dr. Andrews' opinion that Mr. Fuhrer is unable to sustain

employment due to chronic fatigue and fibromyalgia is not a medical opinion she must consider, because it is on an issue reserved to the Commissioner. (AR 22, 36). The ALJ also reasoned that the opinion was inconsistent with, and not supported by, Dr. Andrews' other treatment notes and clinical findings. (AR 22, 36). She further observed that the form had been completed so Mr. Fuhrer's mother could obtain dependent benefits from her employer, and that Dr. Andrews had subsequently undermined her opinion that Mr. Fuhrer was disabled by suggesting Mr. Fuhrer needed additional evaluation and testing to succeed on a disability claim. (AR 22, 36).

Beginning in August 2007, Mr. Fuhrer began to be treated at Greeg Family Health Care Clinic. (AR 409). On August 27, 2007, he was treated for depression and prescribed Paxil. (AR 409). He requested a prescription for Adderall, on the recommendation of his psychologist J. Gregory Kopp, Psy.D., to help with maintaining focus. (AR 409). In April 2010, he arrived at the emergency room for alcohol detoxification, and was diagnosed with chronic alcohol abuse and prescribed Ativan. (AR 401). A few weeks later he reported worsening depression and trouble focusing on school tasks, which he attributed to not taking his Paxil and Adderall. (AR 403). He subsequently restarted those medications. (AR 403). On August 30, 2010, Mr. Fuhrer presented to his primary care provider complaining of abdominal pain and reporting that he had a history of irritable bowel syndrome. (AR 335). He was prescribed medicine, and at a follow-up visit he stated his abdominal pain was improved. (AR 334).

Medical records from Greeg Family Health Care Clinic show that Mr. Fuhrer was stable on Paxil and Adderall throughout 2011. On May 11, 2011, Mr. Fuhrer's psychologist, Dr. Kopp, completed a form titled "Medical Assessment of Ability to do

Work-Related Activities (Mental)" on Mr. Fuhrer's behalf. (AR 320–24). Dr. Kopp stated

that Mr. Fuhrer could not sustain concentration and focus without medication. (AR 321).

The ALJ concluded that, because Mr. Fuhrer is able to control those problems with

medication, that they cannot form the basis of a disability claim. (AR 18, 32–33). Dr.

Kopp attributed all of Mr. Fuhrer's mental limitations to his physical condition, rather than

to any psychiatric disorder. The ALJ noted that "Dr. Kopp is a Psy[.]D., not an M.D., and

thus, he is not qualified to assess [Mr. Fuhrer's] non-psychiatric limitations." (AR 18, 33).

Dr. Kopp did not diagnose Mr. Fuhrer with any specific medically determinable mental

impairments, and opined that Mr. Fuhrer's pain was unpredictable, causing him to be

unreliable and unable to maintain a schedule. (AR 324). Dr. Kopp concluded that for

those reasons Mr. Fuhrer would never be able to work or hold down a job. (AR 324). The

ALJ commented that Dr. Kopp's assessment of non-psychiatric limitations were outside

the scope of his expertise, and afforded Dr. Kopp's opinion only minimal or limited

weight. (AR 18, 22–23, 33, 37). She further noted that the form that Dr. Kopp completed

was relatively conclusory, and unsupported by specific clinical notes and findings. (AR

18, 33).

Mr. Fuhrer underwent a consultative psychological evaluation at the request of the

Commissioner; David C. Holcomb, Ph.D., evaluated Mr. Fuhrer on April 1, 2010. (AR

465–69). Mr. Fuhrer reported that he experienced fibromyalgia symptoms and chronic

fatigue for ten years, and suffered from depression secondary to his medical conditions.

(AR 465, 466). He explained that he had been prescribed Paxil and Adderall by his

primary care provider, that he had phases of heavy alcohol use, and that he quit school

due to his attention deficit hyperactivity disorder. (AR 466–77). The ALJ noted that other

medical records suggest Mr. Fuhrer quit school due to his problems with substance abuse. (AR 18, 32).

Dr. Holcomb administered several diagnostic mental examinations on Mr. Fuhrer. Dr. Holcomb observed that Mr. Fuhrer's concentration was unimpaired and he was attentive to, and engaged in, the content and flow of the evaluation. (AR 468). Mr. Fuhrer scored 29 out of 30 on the mini-mental state evaluation, which is a brief screening of basic cognitive functioning; the results indicate unimpaired cognitive abilities. (AR 469). Dr. Holcomb diagnosed Mr. Fuhrer with a recurrent major depressive disorder, of current mild severity but subject to exacerbations related to medical symptom onset. (AR 469). He also diagnosed alcohol abuse and possible alcohol dependence, and assessed Mr. Fuhrer's Global Assessment of Functioning at 60. (AR 469).

Dr. Holcomb found that Mr. Fuhrer appeared intelligent and sociable, suggesting potential for employment. (AR 469). Dr. Holcomb noted that Mr. Fuhrer appeared able to understand and follow both basic instructions and more complex directions. (AR 469). Dr. Holcomb observed no interpersonal problems that would impede his ability to function in work settings. (AR 469).

On January 10, 2006 Mr. Fuhrer presented to Daniel J. Brandt, M.D., a psychiatrist. (AR 476–77). Dr. Brandt conducted an initial psychiatric examination of Mr. Fuhrer, who complained of depression, fibromyalgia, pain, lack of energy and fatigue. Dr. Brandt diagnosed a depressive disorder not otherwise specific, and saw Mr. Fuhrer for three subsequent follow-up visits in 2006. (AR 478, 479, 480).

Mr. Fuhrer reported to consulting physician, Carlos Pastrana, M.D. on February 27, 2010, that he began experiencing symptoms of constipation and pain with eating in

December 2008, and was eventually diagnosed with irritable bowel syndrome. (AR 471–73). He told Dr. Pastrana that his pain symptoms had improved, but constipation and diarrhea remained. (AR 471–73). Dr. Pastrana reported that Mr. Fuhrer had 13 positive trigger points out of 18 used for the diagnosis of fibromyalgia. (AR 471–73). Dr. Pastrana noted that his musculoskeletal examination was otherwise normal, he was in no acute distress, and ambulated without difficulty. (AR 471–73).

The ALJ granted great weight to the opinions of the nonexamining state agency consultants as to Mr. Fuhrer's mental and physical impairments and functioning. Those consulting physicians found that Mr. Fuhrer is able to perform all of the exertional requirements of medium-level work. (AR 391, 442–63). She noted the consulting physicians determined Mr. Fuhrer's mental impairments were not severe, and that he had no more than a mild degree of limitation in three areas of functioning, and no episodes of decompensation. (AR 390, 450–63).

## IV. Analysis

In his first point of error, Mr. Fuhrer complains that ALJ Montano committed reversible, legal error by failing to find that Mr. Fuhrer's depression and fatigue are severe impairments at step two of the sequential analysis. (Doc 17). Mr. Fuhrer also challenges the ALJ's RFC finding at step four. He argues that ALJ Montano did not apply the correct legal standards when she considered the medical opinions of Dr. Kopp, Dr. Holcomb, and Dr. Andrews. (Doc. 17). Defendant disputes Mr. Fuhrer's arguments, and maintains the ALJ did not commit legal error, because she properly discussed and weighed the medical source opinions, and her analysis is supported by substantial evidence in the record. (Doc. 19).

A.    *No Reversible Legal Error at Step Two*

Mr. Fuhrer argues that the ALJ erred in finding that his depression and fatigue were non-severe impairments at step two of the sequential analysis. In this case, the ALJ found that Mr. Fuhrer's fibromyalgia was a severe impairment, although the she did not find that Mr. Fuhrer's depression and fatigue were severe. (AR 17, 31). The ALJ reasoned that Mr. Fuhrer's depression and fatigue did not cause more than minimal limitations in his ability to perform basic mental work activities, and therefore were not severe impairments. (AR 17, 31).

At step two, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Langley*, 373 F.3d at 1123 (quotations omitted). This is referred to as a "de minimus" standard. *See id.* The claimant need only establish—and an ALJ need only find—one severe impairment to avoid a denial of benefits at that step. *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009) (unpublished). If the ALJ finds the claimant has a severe impairment, then she may not deny benefits at step two, and must proceed to step three. *See id.* Therefore, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.*

Mr. Fuhrer's argument that the ALJ erred at step two fails as a matter of law. At step two, all the ALJ was required to do was determine whether Mr. Fuhrer suffered from at least one severe impairment, and if so, proceed to step three of the sequential analysis. ALJ Montano found that Mr. Fuhrer was severely impaired with fibromyalgia and proceeded to step three; therefore, any error at step two with respect to Mr. Fuhrer's

11

depression or fatigue was harmless. *See id.* (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)). The Court cannot find that ALJ Montano committed reversible legal error at step two.

B.     Medical Source Opinions and the RFC

Mr. Fuhrer argues that ALJ Montano failed to properly consider the medical opinions of various acceptable medical sources in formulating the RFC. He alleges that, because the ALJ erred in her analysis of the medical opinions of Dr. Kopp, Dr. Holcomb, and Dr. Andrews, that the RFC finding and ultimate denial of his disability benefits was therefore erroneous. The Commissioner responds that the ALJ gave proper consideration to the medical source opinions in the record, and did not commit error in making the RFC determination.

1.     *Dr. Kopp: Treating Psychologist*

It is undisputed that Dr. Kopp was Mr. Fuhrer's treating psychologist. (AR 324). Mr. Fuhrer contends that the ALJ erred in considering the medical opinions of Dr. Kopp. The Commissioner maintains that ALJ Montano conducted the appropriate analysis when she discounted Dr. Kopp's opinions.

The ALJ should accord the opinions of treating physicians "controlling weight" when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is conclusive, and accorded "controlling weight" because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or

from reports of individual examinations, such as consultative examinations." *Doyal*, 331

F.3d at 762. When an ALJ determines that a treating physician's opinion is inconsistent

with other medical evidence, the ALJ must "examine the other physicians' reports to see

if they outweigh the treating physician's report . . . ." *Hamlin*, 365 F.3d at 1215 (quotation

omitted).

 If a treating physician's opinion does not satisfy the "controlling weight"

standard—meaning it is not both supported by medical evidence and consistent with the

record—it may still receive deference. Social Security Ruling ("SSR") 96-2p, 1996 SSR

LEXIS 9 at *9. The level of deference the treating physician's opinion receives must be

determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as a
> whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §§

404.1527(c)–(d) and 416.927 (c)–(d). The ALJ must give good reasons—reasons that

are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight he

ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted).

 In sum, the ALJ must apply a sequential two-step inquiry if she wishes to accord a

treating physician's opinion less than controlling weight. First, the ALJ must find the

opinion to be unsupported by medical evidence or inconsistent with substantial evidence

in the record. Next, she must determine what deference she will accord the opinion after

considering the factors listed above, and state sufficiently specific reasons for that

determination. Her determination, like all of her findings, must be supported by substantial evidence.

Mr. Fuhrer argues ALJ Montano procedurally erred in her analysis of Dr. Kopp's opinion by failing to consider three of the deference factors, specifically: (i) the examining relationship between Dr. Kopp and Mr. Fuhrer, (ii) the treatment relationship between Dr. Kopp and Mr. Fuhrer, and (iii) Dr. Kopp's specialization and credentials. (Doc. 17 at 11). He also states that "the ALJ should have at least considered re-contacting Dr. Kopp before giving his opinion minimal weight." (Doc. 17 at 11). Mr. Fuhrer does not explain how the ALJ failed to properly consider the deference factors at step two of the treating physician rule, or how consideration of those factors would affect the ALJ's analysis of Dr. Kopp's opinions and the ultimate RFC finding. He does not even allege it was legal error that the ALJ did not re-contact Dr. Kopp, only stating that Dr. Kopp should have done so.

At steps two and four, ALJ Montano discussed the form that Dr. Kopp completed on May 11, 2011. (AR 18, 22, 32, 36). She noted that the functioning limitations that Dr. Kopp identified were related to Mr. Fuhrer's physical pain and fibromyalgia, and not to any psychiatric disorder. (AR 18, 22, 32, 36). The ALJ noted that Dr. Kopp found Mr. Fuhrer's limitations associated with concentration and focus were controlled with medication, and that Dr. Holcomb's clinical findings showed that Mr. Fuhrer had no difficulty with concentration or focus when he was taking his medication. (AR 18, 22, 32, 36). The ALJ also considered Dr. Kopp's medical qualifications, commenting that Dr. Kopp is a psychotherapist, and not a medical doctor, making him unqualified to assess Mr. Kopp's non-psychiatric limitations. (AR 18, 22, 32, 36). She further observed that Dr.

14

Kopp had not diagnosed any specific medically determinable mental impairment, and that Dr. Kopp had stated Mr. Fuhrer's pain was unpredictable, making him unreliable, and concluding he was unable to work or hold down a job. (AR 18, 22, 32, 36). She also commented that the form Dr. Kopp had completed was conclusory and unsupported by specific clinical notes and findings. (AR 18, 22, 32, 36). For all of those reasons she decided to only afford Dr. Kopp's opinion minimal or limited weight. (AR 18, 22, 32, 36).

It is clear from ALJ Montano's decision that she declined to grant Dr. Kopp's opinion controlling weight, and applied the factors listed in the Regulations to determine what deference she would give to it. The ALJ discussed the nature and extent of the treatment relationship between Dr. Kopp and Mr. Fuhrer; Dr. Kopp's specialty as a psychotherapist and not as a treating physician of Mr. Fuhrer's physical impairments; degree to which Dr. Kopp's medical opinion is supported by relevant evidence; and consistency between the opinion and record as a whole. While an ALJ should consider all of the deference factors, an ALJ is not required to explicitly discuss each one in weighing a medical opinion. *See Anderson v. Astrue*, No. 05-4305, 319 Fed. Appx. 712, 718–19 n. 2, 722–23 (10th Cir. Apr. 3, 2009) (unpublished). Further, all of the factors may not be relevant in a particular case. *See Jones v. Colvin*, No. 12-5057, 514 Fed.Appx. 813, 818 (10th Cir. Apr. 26, 2013) (unpublished). The Court finds that the ALJ gave sufficiently specific reasons why she afforded limited or minimal weight to Dr. Kopp's opinion. Mr. Fuhrer has failed to prove that the ALJ committed legal error when she weighed the opinion.

Mr. Fuhrer also argues that Dr. Kopp's opinions warrant a more restrictive RFC finding than the one ALJ Montano gave him. He points to Dr. Kopp's opinion that Mr.

15

Fuhrer's "health status and physical pain fluctuate(s) unpredictably, so a routine schedule is impossible," that he has difficulty accepting criticism from authority figures, and marked difficulty with decision-making. (AR 321, 322). Mr. Fuhrer argues that the ALJ misconstrued Dr. Kopp's opinion. Mr. Fuhrer contends Dr. Kopp found that his cognitive problems and emotional functioning limitations, in addition to his pain, leave him unable to work. (AR 324). Mr. Fuhrer also contends that even though Dr. Kopp did not diagnose him with a specific mental impairment, that reason alone does not justify granting the opinion less than controlling weight.

None of these arguments challenge ALJ Montano's analysis of Dr. Kopp's opinions. Instead, Mr. Fuhrer asks the Court to reweigh the evidence in his favor and formulate a more restrictive RFC based on an interpretation of Dr. Kopp's opinion that favors a finding of disability. The Court may only consider whether the ALJ followed the specific rules of law in weighing a medical source opinion, and may not reweigh the evidence or substitute its own judgment for the Commissioner's. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The Court finds that the ALJ gave sufficiently specific reasons for the weight she assigned to Dr. Kopp's opinions in consideration of the deference factors.

### 2.   *Dr. Holcomb: Examining, Consulting Psychologist*

Mr. Fuhrer also argues that the ALJ committed error because she improperly considered one of Dr. Holcomb's medical opinions in making the RFC determination. (Doc. 17 at 12). The Commissioner responds that the ALJ committed no reversible legal error, and that Dr. Holcomb's opinion was appropriately discounted.

It is undisputed that Dr. Holcomb is a non-treating, consultative medical source

who examined Mr. Fuhrer only one time, on April 1, 2010. (AR 465–69). The Social

Security Regulations require the ALJ to evaluate every medical opinion in the record.

*See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ determines what weight to give

such a medical opinion by applying the deference factors.[2] *See Hamlin*, 365 F.3d at

1215. "The opinion of an examining physician is generally entitled to less weight than

that of a treating physician, and the opinion of an agency physician who has never seen

the claimant is entitled to the least weight of all." *Robinson*, 366 F.3d at 1084 (citing 20

C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); SSR 96-6p, 1996 SSR LEXIS 3, at

*5–6).

      The ALJ accorded great weight to Dr. Holcomb's opinion that Mr. Fuhrer is able to

perform the cognitive and social requirements of work, but little weight to his suggestion

that Mr. Fuhrer might have some limitations in a working environment due to his waxing

and waning symptoms. (AR 23, 37). The ALJ explained that the limitations Dr. Holcomb

assessed due to waxing and waning symptoms were based entirely on Mr. Fuhrer's

self-reports and unsupported by clinical and laboratory findings. (AR 23, 37).

      Mr. Fuhrer states that the ALJ failed to properly consider Dr. Holcomb's opinion

regarding his waxing and waning symptoms. Mr. Fuhrer points the Court to an opinion

from another federal district court, which Mr. Fuhrer claims to support his contention "that

while the ALJ found that the mental impairment was nonsevere, it was difficulty to

overlook the fact that it was the Commissioner who ordered the consultative

---

[2] Again, those factors are: (1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of
examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant
evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician
is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's
attention which tend to support or contradict the opinion.

psychological evaluation." (Doc. 17 at 12–13) (citing *Dutil v. Barnhart*, 457 F.Supp. 2d 132 (M.D.Fla. 2005)). Mr. Fuhrer does not provide any explanation how that case is applicable to this one, or what place the argument has in a challenge of the ALJ's RFC finding. The Court will not divine what error Mr. Fuhrer seeks to expose in the ALJ's decision, and finds that Mr. Fuhrer has failed to properly raise any legal controversy by merely citing to the *Dutil* opinion.

Last, Mr. Fuhrer points out that generally, a consulting doctor's opinion is given more weight than a non-examining state agency physician. (Doc. 17 at 13). As stated above, ALJ Montano was obligated to weigh Dr. Holbomb's opinion in consideration of the deference factors. 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2). In her decision the ALJ explicitly discussed the degree to which the opinion was supported by relevant evidence and the treating relationship between physician and claimant, commenting that Dr. Holcomb was a consultative psychologist who had only examined Mr. Fuhrer one time. (AR 23, 37). The ALJ also noted that Dr. Holcomb conducted various diagnostic examinations on Mr. Fuhrer, which showed that he has minimal or no functional impairments related to the mental requirements of work. (AR 18, 32). On a mental status examination, Dr. Holcomb observed that Mr. Fuhrer's concentration and cognitive abilities were unimpaired, and Dr. Holcomb assessed Mr. Fuhrer's Global Assessment of Functioning at 60. (AR 468).

The ALJ need not explicitly discuss every deference factor; she need only give sufficiently specific reasons why she afforded the weight she ultimately assigned to the opinion. *Langley*, 373 F.3d at 1119 (citations omitted). The Court finds that the ALJ's decisions reveal that she gave good reasons why she afforded little weight to Dr.

18

Holcomb's opinion regarding Mr. Fuhrer's waxing and waning symptoms. Mr. Fuhrer has failed to prove that the ALJ committed legal error when she weighed the opinion.

Mr. Fuhrer also asserts that when an ALJ rejects a consultative psychologist's opinion because it is based on a claimant's self-reports, that the ALJ should re-contact that consulting physician. (Doc. 17 at 13). Mr. Fuhrer is correct that an ALJ has a duty to develop the record when she finds a claimant's medical records concerning his mental impairment are insufficient. *Thomas v. Barnhart*, No. 04-7141, 147 Fed. Appx. 755, 760 (10th Cir. Sept. 2, 2005) (unpublished). The Tenth Circuit explained in *Thomas* that the ALJ cannot reject a psychological opinion outright for the sole reason that the opinion was based on a claimant's responses, because such rejection would impermissibly substitute the ALJ's judgment for the psychologist's. *See id.* Unlike the scenario in *Thompson*, ALJ Montano did not discount Dr. Holcomb's opinion for the sole reason that it was based on Mr. Fuhrer's self-reports, because the ALJ also rejected the opinion because it was unsupported by clinical and laboratory findings.

Mr. Fuhrer suggests that the ALJ's consideration of Dr. Holcomb's reliance on Mr. Fuhrer's self-reports was improper. However, an ALJ may consider any factor brought to her attention which tends to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c)(6) and 416.927(c)(6). In this case, ALJ Montano found that, after reviewing the record, Dr. Holcomb's opinion as to waxing and waning symptoms was a reflection of Mr. Fuhrer's subjective complaints about his ailments, and not objective clinical or laboratory findings made by Dr. Holcomb. The Court finds that the ALJ properly factored in this consideration when she discounted Dr. Holcomb's opinion.

Again, the Court may only consider whether the ALJ followed the specific rules of

19

law in weighing Dr. Holcomb's opinion, and may not reweigh the evidence or substitute

its own judgment for the Commissioner's. *Cowan*, 552 F.3d at 1185. Mr. Fuhrer has

failed to establish how the ALJ's analysis and discussion of Dr. Holcomb's medical

opinion was inadequate or not supported by substantial evidence. The Court finds that

ALJ properly considered Dr. Holcomb's opinion.

3.    *Dr. Andrews: Treating Physician*

Mr. Furher contends the ALJ also erred in her analysis of Dr. Andrews' opinion.

Dr. Andrews was Mr. Fuhrer's treating physician and family doctor between December

2003 and 2007. (AR 205–319). On May 24, 2004, Dr. Andrews completed a "Medical

History Statement" in support of a disabled dependent application Mr. Fuhrer's mother

filed with her insurer. (AR 267–70). Dr. Andrews completed a fill-in-the-blank form, and

answered "yes" to the question: "[i]s [Mr. Fuhrer] now incapable of self-sustaining

employment because of Mental Retardation or Physical Handicap?" (AR 270). She also

wrote that the nature and cause of his incapacity was chronic fatigue and fibromyalgia,

and that it was "questionable" whether he may be employable in the future. (AR 270).

ALJ Montano granted little weight to Dr. Andrews' opinion dated May 24, 2004.

(AR 22, 37). Dr. Andrews opined that Mr. Fuhrer was unable to sustain employment due

to chronic fatigue and fibromyalgia. (AR 267–70). The ALJ explained that an opinion as

to whether Mr. Fuher is disabled is on a topic that is reserved to the Commissioner, and

therefore not a medical opinion that she must consider pursuant to the Regulations. (AR

22, 36). The ALJ reasoned that a statement by a medical source as to whether a

claimant is "disabled" or "unable to work" does not mean the Commissioner must make a

finding of disability. (AR 22, 36). She also observed that Dr. Andrews' finding of disability

was not consistent with, or supported by, treatment notes and clinical findings. (AR 22, 37). She considered that the stated purpose of the form Dr. Andrews completed was to enable Mr. Fuhrer's mother to obtain benefits from her employer. (AR 22, 37). The ALJ pointed out that the opinion is undermined by Dr. Andrews' subsequent advice to Mr. Fuhrer's mother in December 2004, that Mr. Fuhrer would need additional medical and psychological diagnoses and testing in order to qualify for disability benefits. (AR 22, 37, 264).

Mr. Fuhrer states that the ALJ demonstrated her misunderstanding of fibromyalgia by concluding that Dr. Andrews' opinion is not supported by clinical findings. (Doc. 17 at 13). He also contends that the ALJ could not have found Dr. Andrews acted unprofessionally by exaggerating his limitations to help his mother receive benefits, without "some exceptional basis for that finding." (Doc. 17 at 13) (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002)).

The Commissioner responds that a medical source's judgment as to a claimant's disability is an opinion on an issue reserved to the Commissioner, and therefore not a "medical source opinion" to be considered pursuant to the Regulations. While the Commissioner must consider all of the medical findings and other evidence supporting a medical source's statement that a claimant is disabled, the final determination of disability is left to the Commissioner. 20 C.F.R. §§ 404.1527(d) and 416.927(d)(1); *see also Cowan*, 552 F.3d at 1189. Therefore, ALJ Montano need only consider the medical findings and other evidence supporting a determination of disability, but she could not consider the determination itself as a medical source opinion. ALJ Montano ultimately found that Dr. Andrews' clinical treatments and clinical findings were inconsistent with

her opinion that Mr. Fuhrer is disabled, and discounted the opinion.

Mr. Fuhrer claims that the ALJ misunderstands fibromyalgia "because there are no clinical findings to support the diagnosis of fibromyalgia." (Doc. 17 at 13). According to the Commissioner's policy on evaluating disabling claims of fibromyalgia:

> When a person seeks disability benefits due in whole or in part to [fibromyalgia], we must properly consider the person's symptoms when we decide whether the person has an [medically determinable impairment] of [fibromyalgia]. As with any claim for disability benefits, before we find that a person with an MDI of [fibromyalgia] is disabled, *we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s)* so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

SSR 12-2p, 2012 SSR LEXIS 1, *2–3 (emphasis added). Thus, in order to be disabled from fibromyalgia, a claimant is required to provide sufficient objective evidence that her fibromyalgia limits her ability to work. Mr. Fuhrer's argument that clinical findings are unnecessary to support a diagnosis of fibromyalgia in the context of a disability claim, is erroneous. In accordance with the Social Security Rulings, the ALJ properly considered the fact that Dr. Andrews' own treatment notes and clinical findings were inconsistent with her finding of disability.

Mr. Fuhrer further contends that the ALJ committed error by finding "that Dr. Andrews was unprofessional and attempted to assist Mr. Fuhrer's mother with a form exaggerating his limitations . . . ." (Doc. 17 at 13). Mr. Fuhrer argues that the ALJ could only make such a finding if she had an exceptional basis to do so. (Doc. 17 at 13). Mr. Fuhrer is correct that an ALJ should not make speculative inferences from medical reports; the mere fact that a physician advocates for her patient's cause is not a good reason to reject her opinion as a treating physician. *McGoffin*, 288 F.3d at 1253.

However, Mr. Fuhrer misconstrues the ALJ's finding. The ALJ only stated that the

purpose of the form that Dr. Andrews completed was to obtain insurance benefits from her employer. The ALJ did not find that Dr. Andrews had been unprofessional, nor did she find that Dr. Andrews exaggerated Mr. Fuhrer's limitations. Further, ALJ Montano rejected Dr. Andrews' opinion for several different reasons, including the lack of objective medical evidence to support the opinion, and the fact that Dr. Andrews' subsequent advice undermined the opinion. Therefore, any speculative inference the ALJ may have made was harmless error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The Court may only consider whether the ALJ followed the specific rules of law in rejecting Dr. Andrews' opinion that Mr. Fuhrer was disabled. Mr. Fuhrer has failed to establish the ALJ committed reversible legal error, and the Court declines to find that any such error was committed.

## V. Conclusion

For the reasons discussed above, the Court concludes that the ALJ either committed none of the errors that Mr. Fuhrer alleges, or that any such error was harmless. In addition, the Court finds that substantial evidence supports all of the ALJ's determinations challenged by Mr. Fuhrer.

**IT IS THEREFORE ORDERED** that *Motion to Reverse or Remand for Hearing with Supporting Memorandum* (Doc. 17) be **DENIED** and that this cause of action is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE